IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| DWAYNE A. GOLSTON, ) | |
| ) | |
| Petitioner ) | Case No. 1:20-cv-301 |
| ) | |
| vs. ) | |
| ) | RICHARD A. LANZILLO |
| BARRY SMITH, ) | UNITED STATES MAGISTRATE JUDGE |
| ATTORNEY GENERAL OF THE ) | |
| STATE OF PENNSYLVANIA, ) | MEMORANDUM OPINION |
| DISTRICT ATTORNEY OF ) | ON PETITION FOR WRIT OF |
| ERIE COUNTY, ) | HABEAS CORPUS [ECF No. 1] |
| ) | |
| Respondents ) | |

MEMORANDUM OPINION

Before the Court is a petition for a writ of habeas corpus filed by Dwayne A. Golston

pursuant to 28 U.S.C. § 2254. ECF No. 1. For the reasons that follow, the petition will be denied.[1]

I.    Background

Golston is an inmate at the State Correctional Institution at Houtzdale, where he is serving

a sentence imposed by the Court of Common Pleas of Erie County following his convictions at a

jury trial of forgery, access device fraud, identity theft, receiving stolen property, and possessing

instruments of crime.[2] *Commonwealth v. Golston*, Case No. CP-25-CR-0002218-2016 (Erie Cty.

Com. Pl.).

The trial court set forth the facts underlying the convictions:

Erin Bednaro (née Mehler), the office manager at Erie Bank in Millcreek Township,
testified [Golston] came in on June 15, 2016 and tried to cash savings bonds. See
Trial Transcript, Day One, April 3, 2017, p. 23 ("N.T.1."). One of the tellers alerted

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge.

[2] 18 Pa.C.S. § 4101(a)(2); 18 Pa.C.S. § 4106(a)(1)(ii); 18 Pa.C.S. § 3925(a); 18 Pa.C.S. § 4120(a); and 18 Pa.C.S. §
907(a).

her because [his] Ohio-issued ID was not going through the scanners. N.T.1. p. 23, 25-27. Bednaro was able to identify [Golston] by his facial features and jacket. N.T.1, p. 23. [Golston] tried to cash the same savings bonds at Erie Bank within the preceding two weeks. N.T.1. p. 24. There were eight $1,000 savings bonds for a total of $8,000. N.T.1. p. 24.

The ID presented by [Golston] contained Andrew Peele's name, which matched the name on the savings bonds. N.T.1. p. 27. The social security number of Andrew Peele was present on the top of the savings bonds. N.T.1. p. 30.

When [Golston] left, Bednaro called the police and let them know he was heading west, in the direction of nearby PNC Bank. N.T.1. pp. 35-36. There was a stamp on one of the savings bonds indicating that PNC Bank attempted to process it. N.T.1. pp. 30-31.

Officer Kyle Caldwell responded to the dispatch call and went to Erie Bank. N.T.1, p. 40. After speaking with Bednaro and receiving a description of the suspect as an African American male wearing a derby-style hat and tan sport coat, and receiving a copy of the identification card, Officer Caldwell drove towards PNC Bank. N.T.1. pp. 40-41. When he arrived, he could see through the front glass windows a man wearing a derby-style hat and a tan sport coat that matched the description of [Golston]. N.T.1. p. 43.

As [Golston] was leaving the bank, Officer Caldwell engaged him in a discussion about the savings bonds. N.T.1. p. 44. [Golston] said he was unable to cash the bonds because of an issue with his driver's license and that he had also failed at Erie Bank. N.T.1. p. 44. When the operator license number was run on the license, it came back to a white female named Rose M. Tanker from Lyndhurst, Ohio. N.T.1. pp. 45-46. When the officer ran the name Andrew J. Peele, there was no record found in Ohio. N.T.1. p. 47.

Upon examining the savings bonds, Officer Caldwell ran the name Andrew Peele at the listed Arizona address with the associated Social Security number. N.T.1. p. 48. The result verified Andrew Peele was an 81 year old Caucasian living in Arizona. N.T.1. pp. 48-50. The Ohio ID [Golston] used had the correct birthdate for Andrew Peele even though it is not present anywhere on the savings bonds. N.T.1. p. 50.

[Golston] then identified himself as Dwayne Golston. N.T.1. p. 51. Officer Caldwell ran that name along with the date of birth, address, and phone number provided by [Golston]. An Ohio identification card verified Golston's identity. N.T.1. p. 51.

[Golston] stated that he came across the savings bonds on the back of a urinal in a White Castle restaurant in Chicago, Illinois. N.T.1. pp. 52-53. [Golston] was placed under arrest and given his Miranda warnings. N.T.1. p. 53. When later

> interviewed, [Golston] gave a different version, that he received the bonds from somebody somewhere in the Cleveland projects. N.T.1. p. 55. [Golston] then made a written statement asserting he found the bonds in a White Castle near a dumpster, that he had a disability, needed to take care of his 9-year-old daughter, and had a fake ID made by a guy named Bo. N.T.1. pp. 57-58. [Golston] tried to cash the bonds in Chicago and Cleveland as well. N.T.1. p. 58.

ECF No. 13-5 at 1-3.

Golston filed a direct appeal from his judgment of sentence; the Pennsylvania Superior Court affirmed the judgment of sentence on May 30, 2018. *Commonwealth v. Golston*, 192 A.3d 285 (Pa. Super. 2018) (unpublished memorandum). He did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

On May 8, 2019, Golston filed a petition for relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46. The PCRA court dismissed the petition on October 11, 2019. Golston appealed from the dismissal, but on January 30, 2020, the Pennsylvania Superior Court quashed the appeal as untimely filed. ECF No. 13-18 at 1.

Golston filed the instant petition for a writ of habeas corpus on or about October 14, 2020. ECF No. 1. He filed a brief in support thereof on November 17, 2020. ECF No. 5. Respondents filed a response to the petition on January 13, 2021. ECF No. 13. The petition is ripe for disposition.

II.    Analysis

A.    Grounds for relief

In order to inform the following discussion, the substance of the grounds for relief in the petition are set forth here.

Ground One, entitled "6th and 14th Amndt. Self-Autonomy & IAC Violations," is as follows:

Petitioner was deprived of his 6th Amndt. self-autonomy right to set the objective of his defense as challenging the Commonwealth's and trial court's subject matter jurisdiction and sovereign state police power to hale him into court to answer for any charges where the criminal information failed to charge essential facts such as age of victim in all counts and failed to charge any facts upon which PA sentencing guidelines were promulgated, and where the Commonwealth has abdicated 10th Amendment aut[h]ority under VOITIS, JAG, PREA, etc.... and counsel did not inform petitioner and counsel was not cognizant of law.

ECF No. 1 at 5.

Ground Two, entitled "6[th], 10[th], & 14th Amndt. violations depriving Commonwealth and trial court of jurisdiction," is as follows:

The Commonwealth filed fatally defective bills of information which left out or failed to charge[] pertinent jurisdictional facts; these facts are required to charge a crime, impose or elevate a mandatory minimum "advisory" (held to be unconstitutional by U.S. Supreme Court) guideline sentence which is "mandatory" under state law where 100% of minimum must be served before becoming eligible for paroles; VOTIS, JAG, PREA are quid pro quo federal regulatory programs commandeering state legislative, executive, and judicial process in the clearly-established and forbidden criminal justice context per the Supremacy Clause, Art. VI, clause 2 and 10th Amndt.

*Id.* at 6.

Ground Three, entitled "6th Amndt. Public/Jury/Unanimous Jury Trial/Sentencing Rights Violated," is as follows:

Commonwealth provides no jury sentencing proceeding requiring a unanimous jury finding, beyond a reasonable doubt, of all facts altering, aggravating, enhancing, elevating, etc... the mandatory statutory minimum, see 42 Pa.C.S. § 9721 & Pa. Sent. Code, and public/jury trial-sentencing right is violated where jurors are instructed they may infer/presume facts.

*Id.* at 8.

B.    Timeliness

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-

year limitations period for state prisoners seeking federal habeas review. It is codified at 28 U.S.C.

§ 2244(d) and provides:

> (1)    A 1-year period of limitation shall apply to an application
> for a writ of habeas corpus by a person in custody pursuant
> to the judgment of a State court. The limitation period shall
> run              from the latest of –
>
>   (A)    the date on which the judgment became final by the
>   conclusion of direct review or the expiration of the
>   time for seeking such review;
>   (B)    the date on which the impediment to filing an
>   application created by State action in violation of
>   the Constitution or laws of the United States is
>   removed, if the applicant was prevented from filing
>   by such State action;
>   (C)    the date on which the constitutional right asserted
>   was initially recognized by the Supreme Court, if
>   that right has been newly recognized by the
>   Supreme Court and made retroactively applicable to
>   cases on collateral review; or
>   (D)    the date on which the facts supporting the claim or
>   claims presented could have been discovered
>   through the exercise of due diligence.
>
> (2)    The time during which a properly filed application for State
> post-conviction or other collateral review with respect to
> the        pertinent judgment or claim is pending shall not be
> counted        toward any period of limitation under this
> section.

28 U.S.C. § 2244(d).

In analyzing whether a petition for writ of habeas corpus has been timely filed under the

one-year limitations period, a federal court must undertake a three-part inquiry. First, the court

must determine the "trigger date" for the one-year limitations period pursuant to section

2244(d)(1). *Caldwell v. Mahally, et al.*, 2019 U.S. Dist. LEXIS 192046, *17 (W.D. Pa. Nov. 5,

2019).  Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to section 2244(d)(2).  *Id.* at \*17-18.  Third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented.  *Id.* at \*18.

As a preliminary matter, Golston argues that Second 2244(d)(1) is "of no further force or effect" following the United States Supreme Court's decision in *Murphy v. NCAA*, 138 S. Ct. 1461 (2018), because it is an impermissible federal regulation of the state government's PCRA process. ECF No. 1 at 10.  This argument fails.  As explained by the United States District Court for the Eastern District of Pennsylvania in addressing a similar argument:

> Petitioner appears to argue that the strict one-year statute of limitations under the AEDPA § 2244(d)(1) is unconstitutional following the United States Supreme Court decision in *Murphy v. National Collegiate Athletic Association*, 584 U.S.    , 138 S. Ct. 1461, 200 L. Ed. 2d 854 (2018).  Petitioner argues that the Supreme Court decision in *Murphy* "rendered Congress powerless to regulate a state government's regulation of its citizens." *See* Habeas Pet. at 14.  In *Murphy v. National Collegiate Athletic Association* the issue was whether the United States federal government has the right to control state lawmaking. 584 U.S.    . The State of New Jersey sued to overturn the Professional and Amateur Sports Protection Act (PASPA), which prevented state sponsored sports betting. *See id.* The Supreme Court found the PASPA violated the anticommandeering principle and overturned PASPA. *See id.* **The decision in *Murphy v. National Collegiate Athletic Association* has no effect on the federal habeas corpus statute of limitations under the AEDPA.**  First, the 28 U.S.C. § 2244(d)(1) of the AEDPA is a federal statute which effects federal habeas proceedings, it is not the United States federal government implementing a "jurisdictional time bar on state PCRA proceedings" as petitioner argues.  § 2244(d)(1) is a federal statute implementing a time bar on federal habeas corpus proceedings.

*White v. Smith*, 2019 U.S. Dist. LEXIS 207156, at \*7-8 (E.D. Pa. 2019) (emphasis added) (footnote omitted).

All of the grounds for relief set forth in the petition are related to Golston's trial and sentence. ECF No. 1 at 5-8.  Normally, the "trigger date" for these claims would be the date on

which his judgment of sentence became final, pursuant to Section 2244(d)(1)(A).   However, Golston presents two challenges to that date. ECF No. 1 at 10.

Golston first argues that PCRA counsel's alleged ineffectiveness constitutes a "new discovered fact" which would render the petition timely, through, he appears to argue, the applicability of Section 2244(d)(1)(B). *Id.* This argument fails on multiple bases, the simplest of which is that PCRA counsel, although appointed by the court, did not act on behalf of the state. Counsel could not and did not create an impediment that prevented the filing of a timely habeas petition through state action. *Gerald v. Garmen*, 2016 U.S. Dist. LEXIS 169209, at *6 n.2 (W.D. Pa. 2016). Section 2244(d)(1)(B) does not apply.

Golston next argues that Section 2244(d)(1)(C) applies, citing two cases, *United States v. Haymond*, 139 S. Ct. 2369 (2019), and *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020), which, he claims, provided "new substantive and watershed procedural" law. ECF No. 1 at 10. This argument also fails for multiple reasons. The simplest reason that *Ramos* does not affect the trigger date in this case is that the Supreme Court has held that *Ramos* does not apply retroactively on federal collateral review. *Edwards v. Vannoy*, 141 S. Ct. 1547 (2021). *Haymond* does not affect the trigger date either, because it did not "newly recognize" a constitutional right and because it is inapplicable to this case. In *Haymond*, the Supreme Court issued a decision which merely extended the holdings of prior cases to a single federal sentencing statute and its holding was, by its own terms, limited to that statute. 139 S. Ct. at 2383; *see also Hernandez v. Smith*, 2020 U.S. Dist. LEXIS 178543, at *28-30 (E.D. Pa. 2020) (finding that *Haymond* did not expressly recognize a new right and explaining its inapplicability to state court inmate's case). Obviously, in his state court criminal case, Golston was not sentenced pursuant to the federal statute affected by *Haymond.*

7

Thus, the trigger date for Golston's claims is the date on which his judgment of sentence became final. Golston's judgment of sentence became final on or about June 29, 2018, at the expiration of the time for filing with the Pennsylvania Supreme Court a petition for allowance of appeal from the Pennsylvania Superior Court's affirmance of the judgment of sentence. Pa.R.A.P. 1113(a); *Swartz v. Meyers*, 204 F.3d 417, 419 (3d Cir. 2000) (noting that a judgment becomes final at the conclusion of direct review or the expiration of time for seeking such review). The one-year limitations period for filing a habeas corpus petition began to run on that date. 28 U.S.C. § 2244(d)(1)(A). Accordingly, Golston had to file any federal habeas petition concerning these trial-related claims by June 29, 2019. Because the instant habeas petition was filed on October 14, 2020, after the one-year limitations period had expired, these claims are statutorily time-barred. Given this deficiency, the Court must determine whether Golston can take advantage of the statutory tolling provision set out in Section 2244(d)(2).

Section 2244(d)(2) provides that the one-year limitations period is tolled during the pendency of a "properly filed" state post-conviction proceeding. Golston filed his PCRA petition on May 18, 2019, by which time 323 days of his one-year limitations period had expired. Those proceedings were "properly filed," and, thus, tolled the statute of limitations until, at the latest, January 30, 2020, when the Pennsylvania Superior Court quashed his appeal. At that time, Golston had 42 days remaining in the limitations period. The instant petition was filed on October 14, 2020, approximately 258 days later and well outside of the limitations period.

The United States Supreme Court has held that AEDPA's statute-of-limitation period "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010). A petitioner is entitled to equitable tolling only if he shows both that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely

8

filing. *Id.* at 2562. *See also United States v. Thomas*, 2013 WL 1442489, *7-8 (3d Cir. Apr. 10, 2013); *Ross v. Varano*, 2013 WL 1363525, *9-11 (3d Cir. Apr. 5, 2013); *Munchinski v. Wilson*, 694 F.3d 308, 329-32 (3d Cir. 2012). Unless Golston can demonstrate that these claims are timely, via the application of equitable tolling or otherwise, these claims are untimely. Normally, the Court would permit the petitioner an opportunity to establish the applicability of equitable tolling.[3] However, because the claims are procedurally defaulted, as will be discussed *infra*, the Court need not determine the timeliness of these claims.

### C.   Exhaustion

Golston asserts that he raised the instant claims in his PCRA proceedings. However, because his PCRA appeal was quashed as untimely, none of the claims was presented in the Pennsylvania Superior Court.

As this Court has explained:

> As a general matter, a federal district court may not consider the merits of a habeas petition unless the petitioner has "exhausted the remedies available" in state court. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999). A petitioner satisfies the exhaustion requirement "only if [the petitioner] can show that [he or she] fairly presented the federal claim at each level of the established state-court system for review." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004). The purpose of the exhaustion requirement is to "give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts ... by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

> To "fairly present" a claim for exhaustion purposes, the petitioner must advance the claim's "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 280 (3d Cir. 2018) (quoting *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)). A petitioner may exhaust a federal claim either by raising it on direct appeal or presenting it in post-conviction PCRA proceedings. *O'Sullivan*, 526 U.S. at 845. Either way, the petitioner must present his federal

---

[3] The Court may raise the issue of timeliness *sua sponte* as long as the petitioner is given fair notice and an opportunity to respond and is not prejudiced. *Day v. McDonough*, 547 U.S. 198, 205-10 (2006); *United States v. Bendolph*, 409 F.3d 155, 161-70 (3d Cir. 2005) (en banc).

constitutional claims "to each level of the state courts empowered to hear those claims." *Id.* at 847 ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"). "Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied." *Stoss v. Estock*, 2019 U.S. Dist. LEXIS 83240, 2019 WL 2160464, at *3 (M.D. Pa. May 17, 2019) (citing *Castille v. Peoples*, 489 U.S. 346, 350, 109 S. Ct. 1056, 103 L. Ed. 2d 380 (1989)).

*Dean v. Tice*, 2020 U.S. Dist. LEXIS 96328, at *12-13 (W.D. Pa. June 1, 2020).

When a petitioner has failed to fairly present his claim to the state courts, but state procedural rules, such as the time limitations in the PCRA, *see* 42 Pa.C.S.A. § 9545(b), now bar him from doing so, the exhaustion requirement is excused; however, the claims are considered to be procedurally defaulted. *See, e.g., Lines v. Larkins*, 208 F.3d 153, 162-66 (3d Cir. 2000). A petitioner can overcome procedural default by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law, or [] that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In his brief in support of his petition, Golston does not discuss the merits of his claims at all, but exclusively discusses the alleged ineffectiveness of his appointed PCRA counsel, alleging that counsel never communicated with him before submitting a "no-merit' letter to the PCRA court. ECF No. 5. Presumably, this argument is an effort to overcome his procedural default. *See id.* at 2 (citing *Martinez v. Ryan*, 566 U.S. 1 (2012)).

The relevant law is as follows:

The general rule is that, because there is no federal constitutional right to counsel in a PCRA proceeding, a petitioner cannot rely upon PCRA counsel's ineffectiveness to overcome the default of a federal habeas claim. *See, e.g., Coleman*, 501 U.S. at 752-54; *Davila v. Davis*, 137 S. Ct. 2058, 2062, 198 L. Ed. 2d 603 (2017) ("An attorney error does not qualify as 'cause' to excuse a procedural default unless the error amounted to constitutionally ineffective assistance of counsel. Because a prisoner does not have a constitutional right to counsel in state-

postconviction proceedings, ineffective assistance in those proceedings does not qualify as cause to excuse a procedural default."). In *Martinez v. Ryan*, 566 U.S. 1, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), the Supreme Court announced a limited, but significant, exception to this rule. Under *Martinez*, a Pennsylvania prisoner may argue that his PCRA counsel "caused" the default of a claim that trial counsel was ineffective. 566 U.S. at 9; *Workman v. Sup't Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019). The holding in *Martinez* is limited to defaulted ineffective-assistance-of-trial-counsel claims. *See, e.g.*, *Davila*, 137 S. Ct. at 2062-70. It does not apply to any other type of claim. *Id.*

Under *Martinez*, in order to avoid the default of an ineffective-assistance-of-trial-counsel claim, Petitioner must establish two things: (1) the ineffective-assistance-of-trial-counsel claim is "substantial"; and (2) [PCRA counsel] was ineffective within the meaning of *Strickland* [*v. Washington*, 466 U.S. 668 (1984)]. *Martinez*, 566 U.S. at 14; *Workman*, 915 F.3d at 937. . . .

The Court of Appeals has explained that an ineffective-assistance-of-trial-counsel claim is "substantial" if it has "some merit." *Workman*, 915 F.3d at 938. The evaluation of whether a claim has "some merit" is the same one that a federal court undertakes when it considers whether to grant a certificate of appealability. *Id.* Thus, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000); *Workman*, 915 F.3d at 938 (a petitioner "must 'show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should be resolved in a different manner of that the issues presented were adequate to deserve encouragement to proceed further.'"), quoting *Martinez*, 566 U.S. at 14, which cited *Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003).

*Hensley v. Cappoza*, 2019 U.S. Dist. LEXIS 185175, at *14-16 (W.D. Pa. Oct. 24, 2019).

As should be clear from the above-state law, *Martinez* is limited to defaulted ineffective-assistance-of-trial-counsel claims. Thus, any part of Ground One not based on trial counsel's ineffectiveness claims, as well as Grounds Two and Three in their entirety, are procedurally defaulted and the application of *Martinez* cannot overcome the default.

As to the part of Ground One based on trial counsel's ineffectiveness, the following law applies.

The *Strickland* test is explained as follows:

Ineffective assistance of counsel claims are governed by the familiar standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prevail on a claim of ineffective assistance under *Strickland*, the Petitioner has the burden of establishing that his trial "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Importantly, the Supreme Court emphasized that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]'" *Burt v. Titlow*, — U.S. — , 134 S.Ct. 10, 17, 187 L. Ed. 2d 348 (2013) (quoting *Strickland*, 466 U.S. at 690). *See also Harrington v. Richter*, 562 U.S. 86, 104, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance.") (quoting *Strickland*, 466 U.S. at 689).

The Supreme Court also instructed:

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.

*Richter*, 562 U.S. at 105.

*Strickland* also requires that the Petitioner demonstrate that he was prejudiced by his trial counsel's alleged deficient performance. This places the burden on him to establish "that there is a reasonable probability that, but for counsel's unprofessional errors," the result of his trial "would have been different." *Strickland*, 466 U.S. at 694. As the United States Court of Appeals for the Third Circuit explained:

[The Petitioner] "need not show that counsel's deficient performance 'more likely than not altered the outcome of the case' - rather, he must show only 'a probability sufficient to undermine confidence in the outcome.'" *Jacobs v. Horn*, 395 F.3d 92, 105 (3d Cir. 2005) (quoting *Strickland*, 466 U.S. at 693-94). On the other hand, it is not enough "to show that the errors had some

conceivable effect on the outcome of the proceeding." [*Richter*], 131 S.Ct. at 787 (citing *Strickland*, 466 U.S. at 693). Counsel's errors must be "so serious as to deprive the defendant of a fair trial." *Id.* at 787-88 (citing *Strickland*, 466 U.S. at 687). The likelihood of a different result must be substantial, not just conceivable. *Id.*

*Brown v. Wenerowicz*, 663 F.3d 619, 630 (3d Cir. 2011).

*Howard v. Delbalso*, 2017 U.S. Dist. LEXIS 126581, at *5-7 (W.D. Pa. Aug. 10, 2017) (footnote omitted).

In Ground One, Golston claims, *inter alia*, that trial counsel "did not inform petitioner and counsel was not cognizant of law." ECF No. 1 at 5. A generous reading of petition reveals that the law to which Golston refers is that the trial court lacked subject matter jurisdiction over the criminal case and/or the Commonwealth of Pennsylvania lacked the power to hale him into court to answer for one or more criminal charge(s) because the criminal information failed to specify the age of victim, a fact which was later relied on by the trial court in imposing a sentence in the aggravated Pennsylvania Sentencing Guidelines range. *See id.*

In Pennsylvania, there are the two requirements for subject matter jurisdiction in criminal cases: "the competency of the court to hear the case, and the provision of formal notice to the defendant of the crimes charged in compliance with the Sixth Amendment of the United States Constitution and Article I, Section 9, of the Pennsylvania Constitution." *Commonwealth v. Jones*, 929 A.2d 205, 210 (Pa. 2007) (citation omitted). Golston is concerned only on the notice requirement, arguing that the information failed to provide necessary content.

Pennsylvania Rule of Criminal Procedure 560(B) provides:

(B) The information shall be signed by the attorney for the Commonwealth and shall be valid and sufficient in law if it contains:

(1) a caption showing that the prosecution is carried on in the name of and by the authority of the Commonwealth of Pennsylvania;

(2) the name of the defendant, or if the defendant is unknown, a description of the defendant as nearly as may be;

(3) the date when the offense is alleged to have been committed if the precise date is known, and the day of the week if it is an essential element of the offense charged, provided that if the precise date is not known or if the offense is a continuing one, an allegation that it was committed on or about any date within the period fixed by the statute of limitations shall be sufficient;

(4) the county where the offense is alleged to have been committed;

(5) a plain and concise statement of the essential elements of the offense substantially the same as or cognate to the offense alleged in the complaint;

(6) a concluding statement that "all of which is against the Act of Assembly and the peace and dignity of the Commonwealth"; and

(7) a certification that the information complies with the provisions of the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania regarding confidential information and documents.

The notice required to support subject matter jurisdiction has been explained by the Pennsylvania Supreme Court as follows:

... [I]t is necessary that the Commonwealth confront the defendant with a formal and specific accusation of the crimes charged. This accusation enables the defendant to prepare any defenses available to him, and to protect himself against further prosecution for the same cause; it also enables the trial court to pass on the sufficiency of the facts alleged in the indictment or information to support a conviction.

*Jones*, 929 A.2d at 211-12 (quoting *Commonwealth v. Little*, 314 A.2d 270, 272-73 (Pa. 1974)).

None of the offenses with which Golston was charged and convicted contain an essential element relating to the age of the victim.[4] The information was not flawed for lacking such an element.

---

[4] The grading of the offense of identity theft should be raised by one grade if the victim of the offense is, *inter alia*, 60 years of age or older, 18 Pa.C.S. § 4120(c)(2); however, it does not appear that this subsection was employed in Golston's case. He was charged with identity theft as a felony of the third degree, which is the standard grading when the total value involved was $2,000 or more, 18 Pa.C.S. § 4120(c)(1)(ii). The total value involved in Golston's case was $8,000. ECF No. 13-5 at 11.

Further, to the extent that Golston is asserting a challenge pursuant to *Alleyne v. United States*, 570 U.S. 99 (2012), in which the United States Supreme Court held that any fact that increases the mandatory minimum sentence of a crime is an element of the offense that must be submitted and found beyond a reasonable doubt, *Alleyne* is inapplicable to Golston's case. No mandatory minimum sentence was imposed on Golston. Although the trial court cited, *inter alia*, the elderly nature of the victim as a basis for sentencing Golston in the aggravated Pennsylvania Sentencing Guidelines range, the Supreme Court specifically excepted that type of "broad sentencing discretion, informed by judicial factfinding" from its holding in *Alleyne*, reaffirming the constitutionality of "the broad discretion of judges to select a sentence within the range authorized by law." *Alleyne*, 570 U.S. at 116-17.

Finally, the fake Ohio identification card Golston used in committing the relevant crimes displayed Andrew Peele's real name and birthdate. Golston was keenly aware of Peele's age.

In short, Golston's stated version of the law is inaccurate. Thus, trial counsel could not have been ineffective for failing to know and/or inform him of this "law." Because Golston has not established that the ineffective assistance of trial counsel claim is substantial, he cannot avoid procedural default of this claim.

D.     Conclusion

For the foregoing reasons, the petition will be denied.

III.    Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from ... the final order in a habeas corpus proceeding in which the detention complained

15

of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). It also provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* Applying those standards here, jurists of reason would not find it debatable whether Golston's claims should be denied for the reasons given herein. Accordingly, no certificate of appealability should issue.

An appropriate Order will follow.

Dated: October 5, 2021

RICHARD A. LANZILLO
United States Magistrate Judge